NANCYROSE HERNANDEZ 312097
LAW OFFICE OF NANCYROSE HERNANDEZ
31556 Railroad Canyon Road
Canyon Lake, CA 92587
Tel: (951) 708-1497
Fax: (951) 905-1632
Email: nancyrose@lawofficeofnancyrosehernandez.com

Attorney for Plaintiff, HAROLD THOMAS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD J. THOMAS, an individual;<br><br>        Plaintiff,<br><br>    vs<br><br>MEGAN J. BRENNAN, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE, a Government Agency;,<br><br>        Defendants. | Case No. 5:20-cv-01364<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA**<br>2. **HARASSMENT IN VIOLATION OF THE ADA**<br>3. **FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF THE ADA**<br>4. **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF THE ADA**<br>5. **RETALIATION IN VIOLATION OF 42 U.S.C. § 12203**<br>6. **VIOLATION OF THE REHABILITATION ACT**<br><br>**JURY TRIAL DEMANDED** |

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff, HAROLD J. THOMAS, alleges as follows,

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(3) and (4) to enforce provisions of the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) and the Rehabilitation Act (29 U.S.C. § 701 et seq.)

2. Plaintiff, HAROLD J. THOMAS (hereinafter referred to as "Plaintiff"), is and at all times relevant to this action was, a resident of Riverside County, State of California.

3. Defendant, MEGAN J. BRENNAN, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE (hereinafter referred to as "EMPLOYER" or as "Defendant"), is a Government Entity and at all times relevant to this action was, an entity doing business in the County of Riverside, State of California.

4. Plaintiff was employed by EMPLOYER in the County of Riverside, State of California. Plaintiff was employed to work at EMPLOYER'S distribution center located in the City of Moreno Valley, County of Riverside, State of California.

5. EMPLOYER is an agency of the federal government and employs more than five hundred (500) full-time employees.

6. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claims occurred in this district.

7. Plaintiff has complied with the requirements of Code of Federal Regulations sections 1614.103 et seq. by exhausting his administrative remedies with the Equal Employment Office of the United States Postal Service (hereinafter referred to as "EEO").

LAW OFFICE OF
NANCYROSE
HERNANDEZ

## SPECIFIC FACTUAL ALLEGATIONS

8. Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

9. In or about November 2014, Plaintiff was employed by EMPLOYER, working as a Postal Support Employee ("PSE") clerk at EMPLOYER'S Morena Valley Processing and Distribution Center ("P&DC"). Plaintiff was recognized as a hard-working reliable employee, and he was known to work quietly and diligently throughout the facility. During Plaintiff's employment with EMPLOYER, he never received a write-up, warning, or disciplinary action, as he was a competent and steadfast employee. Plaintiff performed the essential functions of his job without the need for reasonable accommodations from November 2014 through February 2019.

10. Article 2, Section 1 of the Collective Bargaining Agreement ("CBA") between EMPLOYER and the American Postal Workers Union, AFL-CIO ("Union") states: "The Employer and the Union agree that there shall be no discrimination by the Employer or the Union against employees because of race, color, creed, religion, national origin, sex, or marital status. In addition, consistent with the other provisions of this Agreement, there shall be no unlawful discrimination against handicapped employees, as prohibited by the Rehabilitation Act."

11. Plaintiff is informed and believes and thereon alleges that at the time Plaintiff was hired by EMPLOYER, and thereafter, EMPLOYER promised a workplace that was fair. Plaintiff was promised he would not be subjected to discrimination, harassment, or retaliation. Plaintiff was promised reasonable accommodations and a fair interactive process. Those promised were breached by EMPLOYER.

12. The Standard Job Description for a Mail Processing Clerk indicates the functional purpose is to perform a variety of clerk duties required to process

Case No.  5:20-cv-01364
COMPLAINT FOR DAMAGES

mail using automated mail processing equipment or manual methods of sortation and distribution. Plaintiff can perform the essential functions of his position as a Mail Processing Clerk with or without reasonable accommodations.

13. Plaintiff was converted to a career employee as a Mail Processing Clerk, providing him with a stable and secured position with EMPLOYER effective on June 9, 2018. Article 7.1.A # 1 of the CBA states: "Full-Time. Employees ...shall be assigned to regular schedules consisting of five (5) eight (8) hour days in a service week." Article 8.1 of the CBA states: "The work week for full-time regulars shall be forty (40) hours per week, eight hours per day......."  Pursuant to the CBA, Plaintiff was guaranteed forty (40) hours per week, eight (8) hours of work per day in a service week.

14. After Plaintiff converted to a career employee with EMPLOYER, the P&DC did not have a bid position for Plaintiff; therefore, Plaintiff was a floater and rotating throughout the facility, working in different areas, such as manual letters, scan and band, APBS, manual flats, FSS, AFSM 100, and in 2019, he was placed in automation.

15. Plaintiff is a sixty-six-year-old man with physical disabilities. Plaintiff has been diagnosed with qualifying physical disabilities. Prior to his employment with EMPLOYER, Plaintiff underwent double knee surgery for ruptured bilateral quadricep tendons and has symptomatic sciatica condition. Plaintiff identifies his physical disabilities as specific back and knee conditions, bilateral osteoarthritis of the knee, internal derangement of knees, low back pain, spondylosis without myelopathy or radiculopathy, and lumbosacral region post bilateral quadriceps tendon reconstruction. Plaintiff's condition affects one or more specified body systems and limits major life activities.

LAW OFFICE OF
NANCYROSE
HERNANDEZ

16. Plaintiff is informed and believes and thereon alleges that major life activities affected by his physical disability include physical, mental, social activities, and working. Plaintiff is unable to perform major life activities that the average person in the general population could perform.

17. Plaintiff is a qualified individual with physical disabilities and can perform the essential functions of his job with or without reasonable accommodations.

18. In or about February 2019, Plaintiff was instructed to work in P&DC's area of automation. Immediately, Plaintiff experienced severe pain, discomfort, and health issues/complications from being required to constantly bend, twist, kneel, and lift heavy objects, loading and operating the DPS machine. To Plaintiff's detriment, he was only provided with one day of training; therefore, lack of training also contributed to aggravation of his medical condition and physical disabilities.

19. Plaintiff is informed and believes and thereon alleges that while he was working in automation, management failed to staff the area with the required number of employees; therefore, causing employees, including Plaintiff to suffer from strenuous job duties without the proper support, causing his physical disabilities to worsen.

20. After working in automation, and engaging in constant bending, lifting, sweeping, pulling/pushing, and carrying heavy mail without assistance or a rest break, Plaintiff developed a limp. Plaintiff's supervisor, Robert Gil ("Gil"), inquired about the limp; however, did not engage Plaintiff in an interactive discussion to determine whether Plaintiff needed accommodations, nor consulted with Plaintiff, regarding his job duties and resulting medical conditions. Supervisor, Gil, had knowledge that working in automation was causing Plaintiff pain and discomfort; however, Gil failed to document and/or report the work-related injuries, failed to take remedial

LAW OFFICE OF
NANCYROSE
HERNANDEZ

action to facilitate Plaintiff with reasonable accommodations, and failed to provide him with medical treatment, to which he was entitled. Rather, Gil and other supervisors, managers, and employees at the P&DC referred to Plaintiff as the "guy with the limp."

21. In or about February 2019, Plaintiff was sweeping in the facility for four hours without a break, and he realized he was not feeling well. Co-workers noticed his condition and asked Plaintiff if he was feeling ok. Plaintiff left work, feeling weak, light-headed, dizzy, and extremely ill. Upon visiting his doctor, Plaintiff was informed that he nearly suffered a stroke, his blood pressure was unhealthily high, and he was required to take a three to four-day medical leave to recover from his medical condition. Because of working in automation, Plaintiff suffered from constant pain, he could not straighten his body, and his lower extremities were in dire pain.

22. Plaintiff informed his Supervisor, Gil, and Manager Distribution Operations ("MOD"), Irene McKinney ("McKinney") of his medical condition and physical disabilities. McKinney informed Plaintiff that he needed to visit the doctor and have the doctor fill-out the light duty request. Management did not provide Plaintiff with any other instructions and management did not engage in dialogue with Plaintiff to discuss his working conditions, job duties, and/or resulting medical conditions. Rather, McKinney instructed Plaintiff to call out of work sick, using his accrued sick days. Plaintiff explained that he was not sick, but rather, he was concerned about working in automation without appropriate breaks and not enough employees to assist with the required job duties; therefore, he was requesting reasonable accommodations to be allowed to work in an alternate area, or be provided with breaks.

23. Plaintiff asked his Union Steward, Pelagio Navarro, for the Workers' Compensation form, and in response, Mr. Navarro instructed Plaintiff to get

Case No.  5:20-cv-01364
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

the form from his Supervisor, Gil. Plaintiff requested the form from Gil, and Gil responded by advising Plaintiff that since his injury did not originate at the facility, Gil could not provide Plaintiff with the form. Plaintiff asked, "Are you sure?" because his Union Steward stated that he could get the form. In response to Gil refusing to provide Plaintiff with the Workers' Compensation form, Plaintiff reported the issue to Mr. Navarro.

24. Upon disclosing his medical condition to his superiors, EMPLOYER'S management failed to provide Plaintiff with Workers' Compensation documents to report the aggravation to his medical condition, specifically his work-related injuries. McKinney did not provide Plaintiff with the correct paperwork or packet to report his work-related injuries. Plaintiff was confused, suffering from serious medical conditions, and he was left without any recourse but to call off work sick.

25. Plaintiff is informed and believes and thereon alleges that management had knowledge of Plaintiff's physical disabilities from Plaintiff disclosing his disabilities, by observation of his medical condition, and from his personnel file. Plaintiff provided management with his medical documentation that specified and identified his work-related restrictions.

26. Plaintiff is a qualified individual with the requisite skill, training, and job experience to perform the essential functions of his job; however, because of the agitation he was experiencing in his knee, back, and lower extremities due to working in automation without the proper support, he requested reasonable accommodations to enable him to perform the essential functions of his position. The accommodations would not endanger the health and safety of him, or other employees, but to the contrary, the accommodation request would ensure Plaintiff's health and safety while working for EMPLOYER.

LAW OFFICE OF
NANCYROSE
HERNANDEZ

27. Plaintiff is informed and believes and thereon alleges that on April 8, 2019, Plaintiff visited the physician for a medical evaluation pursuant to McKinney's instruction that Plaintiff have the physician complete the light duty request medical documentation. Pursuant to the medical documentation, the physician noted that Plaintiff had work restrictions due to lower back and bilateral knee joints and the estimated duration of restrictions was four (4) to six (6) months. Plaintiff's physician recommended that Plaintiff not be in a position to lift, push, pull, or carry items weighing more than twenty-five (25) pounds on an intermittent basis or fifteen (15) pounds on a constant basis. He should not be put in a position to perform repetitive kneeling, bending, squatting, or crouching activities. No prolonged standing or walking activities more than one (1) hour without a fifteen (15) minute break to sit and rest. The restrictions were provided in an effort to decrease significant flareups or exacerbation of his underlying pathology. Plaintiff's Physician noted that these restrictions will reduce the risk of reinjury.

28. Plaintiff provided Supervisor, Gil, and MDO, McKinney, with his medical documentation, and Plaintiff requested reasonable accommodations pursuant to his work-related restrictions. McKinney accepted and acknowledged receipt of Plaintiff's light-duty documents, and she responded that she could accommodate Plaintiff by placing him in manual letters, as there was work in that particular area of the P&DC. For approximately three weeks, Plaintiff was accommodated and authorized to work in manual letters. There was work in the unit, and Plaintiff was able to work his contract guaranteed eight (8) hours per day. The accommodations enabled Plaintiff to perform the essential functions of his job without issue.

29. On or about May 18, 2019, Plaintiff clocked into work, as usual, and proceeded to work in manual letters, as he had been authorized to do by his

LAW OFFICE OF
NANCYROSE
HERNANDEZ

supervisors and managers. At approximately 10:30 p.m., McKinney approached Plaintiff and asked him to go to her office. Plaintiff stopped working and complied with McKinney's request. McKinney informed Plaintiff that because of his doctor's orders, he could not be on his feet for more than an hour per day, and further, that he needed to go back to the doctor to have the doctor extend the time that he can be on his feet. McKinney stated that she could no longer accommodate Plaintiff and from that point on, Plaintiff could only be accommodated with working one hour each day. Plaintiff responded to McKinney by stating that he could not survive with an income of one hour per day, further, he stated that she was misreading his medical restrictions. Plaintiff explained to McKinney that his medical documentation states that he could perform his job duties for eight (8) hour per day; however, his restrictions indicate that he requires a break to rest or sit after one hour of prolonged walking. Plaintiff inquired why would he ask his doctor to change his work restrictions if his medical conditions require the restrictions. McKinney stated that she would have to send Plaintiff home after working one (1) hour per day. During this meeting, there was no discussion of Plaintiff's job duties, undue burden on EMPLOYER, analysis of Plaintiff's essential and non-essential job duties, possibility of reassignment, potential accommodations, or review of Plaintiff's medical documentation to justify forcing Plaintiff to clock-out after one (1) hour of work. To be clear, there was available work in manual letters, and Plaintiff could have continued working his eight (8) hour shift which accommodated his work restrictions without any undue hardship or burden on EMPLOYER.

30. Other similarly situated employees were authorized to float and relieve employees in different areas where there was work throughout the P&DC, showing Plaintiff was treated differently than similarly situated individuals. As of May 18, 2019, Plaintiff was denied the ability to float or relieve other

Case No.  5:20-cv-01364
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

employees, as he had previously been authorized to do since 2014, prior to requesting reasonable accommodations.

31. In response to EMPLOYER'S, and more specifically management's withdrawal of his accommodations in manual letters, Plaintiff noticed chairs were removed from manual letters. Under information and belief, there was always a chair in manual letters, as the case was set up to sort the mail by zip code in slots in a sitting position; therefore, employees working in manual letters are at eye level with the corresponding zip codes. Plaintiff had been relieving employees and floating in manual letters since 2014 when he was working as a PSE clerk, prior to MDO, McKinney, being assigned to the P&DC. Not only did Plaintiff relieve employees in manual letters, but he also relieved employees, as a float in APBS, and other areas of the P&DC. From 2014 through 2019, Plaintiff was authorized to float and relieve employees in the P&DC; however, after requesting reasonable accommodations for his physical disabilities, management instructed Plaintiff that he was no longer authorized to float, despite the work being available.

32. Prior to Plaintiff's request for accommodations, other similarly situated employees were accommodated with chairs in the facility. In fact, Plaintiff often came into work and noticed that the shift prior to his shift had chairs in the facility; however, once Plaintiff's shift began, the chairs were intentionally removed from the P&DC. Under information and belief, other similarly situated employees at EMPLOYER'S various P&DC are provided with chairs. Under information and belief, McKinney represented that chairs in manual letters would not assist Plaintiff because the chairs were too low to reach the manual case; however, under information and belief, this representation is false and misleading, as the manual case is designed to be at eye level when sitting in a chair. Further, chairs were provided in manual

Case No.  5:20-cv-01364
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

letters prior to Plaintiff's request for a chair, and only removed after his request for reasonable accommodations.

33. Plaintiff is informed and believes and thereon alleges that without an appropriate interactive meeting, McKinney determined that Plaintiff could only work one (1) hour per day, unilaterally refusing to accommodate Plaintiff without first engaging in an interactive meeting, causing Plaintiff to sustain substantial damages, including a substantial loss in his earnings.

34. Plaintiff is informed and believes and thereon alleges that McKinney informed Plaintiff that the only way he could return to work was if he had his physician change his restrictions. McKinney advised Plaintiff that he was prohibited from returning to work until the doctor changed his restrictions to state that he could remain on his feet. In response, Plaintiff contacted his Union Steward, Mr. Navarro, to advise him of this situation, and further, Plaintiff informed Mr. Navarro and McKinney that his doctor could not see him until June 10, 2019.

35. Because of the extent and severity of Plaintiff's physical disabilities, he did not feel it was safe, nor appropriate to change an expert physician's medical restrictions. Despite this arbitrary decision not to accommodate a disabled sixty-six-year-old employee, other employees in the facility working different shifts were provided with reasonable accommodations, showing similarly situated individuals were treated differently than Plaintiff. As a result of EMPLOYER'S refusal to accommodate, Plaintiff exhausted his internal remedies by filing grievance statements with his Union.

36. Plaintiff is informed and believes and thereon alleges that McKinney indicated that there was no available work in her unit. Under information and belief, McKinney's representation that there was no available work in her unit was false, as there was available work in different areas of the P&DC for floaters, including in manual letters, considering the abundance of

LAW OFFICE OF
NANCYROSE
HERNANDEZ

mail. Further, Plaintiff was provided with the reasonable accommodation of working in manual letters, and he was working eight (8) hours per day, showing McKinney's representation that there was no work was false. Also, other similarly situated employees who did not request accommodations or disclose physical disabilities were authorized to float and relieve employees where work was available in the P&DC.

37. Plaintiff is informed and believes and thereon alleges that McKinney instructed Plaintiff to return to the physician to have his work restrictions changed, so that he could continue working at the P&DC. Further, McKinney informed Plaintiff that she reviewed Plaintiff's light duty request and medical documentation from April 8, 2019 with Supervisor Distribution Operations, Eric Gilbert ("Gilbert"), and Gilbert stated that Plaintiff should not return to work until he visits the physician again to have his restrictions changed. McKinney, again, instructed Plaintiff to go back to the physician to have his work restrictions changed.

38. Due to EMPLOYER'S refusal to accommodate, refusal to engage in a good faith interactive process, and instruction to change Plaintiff's restrictions, Plaintiff contacted his Union representative and filed a Step 1 grievance.

39. On May 28, 2019, Plaintiff and his Union filed a grievance, regarding management's failure to accommodate Plaintiff. In the Step 1 grievance, the Union and Plaintiff contend MVP&DC LMOU Items 15-17 states: "The installation head shall make every effort to assign the employee work within his/her medical restrictions." This section also specifies what light duty work (e.g. manual flats, manual letters & Nixie). Management has been sending light duty employees to APBS and FSS for light duty. Plaintiff and his Union contend that management can easily accommodate Plaintiff if they wanted to, but they prefer not to. There was not even a pretense of trying to find him work.  Secondly, Article 13.4.A requires that "every effort shall be

LAW OFFICE OF
NANCYROSE
HERNANDEZ

made to assign light duty employees within their present craft or occupational group, even if the light duty assignment results in reduction of casual works." As stated above, management did not even try to look for any kind of job to accommodate Plaintiff based on his restrictions. Further, Plaintiff and his Union contend that pursuant to the CBA, Plaintiff was guaranteed eight (8) hours per day, forty (40) hours per service week; therefore, management's conduct of sending Plaintiff home after only working for one (1) hour per day without placing Plaintiff in light duty status was a violation of the CBA, causing Plaintiff damages.

40. Article 5 of the CBA prohibits the EMPLOYER from taking any actions affecting wages, hours and other terms and conditions of employment as defined in Section 8(d) of the National Labor Relations Act which violates the terms of the Agreement or are otherwise inconsistent with its obligations under law. Under information and belief, EMPLOYER violated the National Agreement by taking adverse employment action against Plaintiff, specifically forced leave of absence, refusal to accommodate, and failure to engage in a good faith interactive process, affecting his wages, hours, and terms and conditions of employment. By stating that Plaintiff must clock out after one (1) hour and that he could not return to work until his doctor changed his restrictions was a violation of the National Agreement.

41. Plaintiff is informed and believes and thereon alleges that on June 10, 2019, Plaintiff visited his physician for a medical evaluation pursuant to management's instruction to update his medical documentation. Plaintiff's light duty request dated June 10, 2019 indicates Plaintiff can perform the following tasks continuously or intermittently for up to eight (8) hours a day: lifting ten (10) pounds continuously, lifting twenty-five (25) pounds intermittently, sitting continuously, simple grasping continuously, fine manipulation continuously, reaching above shoulder continuously, driving a

Case No.  5:20-cv-01364
COMPLAINT FOR DAMAGES

vehicle continuously, operating machinery continuously, standing intermittently, walking intermittently, twisting intermittently, and pushing/pulling intermittently. Plaintiff can kneel and bend/stoop for intermittently for up to two (2) hours a day. Plaintiff's medical documentation indicates that his Provider is of the opinion that Plaintiff would benefit from having restrictions in place to help with his current job activities. The physician's opinion from his previous evaluation on April 8, 2019 remained the same, noting Plaintiff not be in a position to lift, push, pull, or carry items weighing more than twenty-five (25) pounds on an intermittent basis or fifteen (15) pounds on a constant basis. He should not be put in a position to perform repetitive kneeling, bending, squatting, or crouching activities. No prolonged standing or walking activities more than one (1) hour without a fifteen (15) minute break to sit and rest. The restrictions were provided in an effort to decrease significant flareups or exacerbation of his underlying pathology. Plaintiff's Physician noted that these restrictions will reduce the risk of reinjury.

42. Plaintiff submitted his second light duty request and medical documentation to his Manager and Supervisor. McKinney acknowledged receipt of Plaintiff's second submitted medical documentation and light duty request. As a result, McKinney informed Plaintiff that she could not accommodate his work restrictions. McKinney made this determination without engaging in an interactive meeting to discuss Plaintiff's job duties, undue burden on EMPLOYER, analysis of Plaintiff's essential and non-essential job duties, possibility of reassignment, potential accommodations, or review of Plaintiff's medical documentation.

43. Under information and belief, McKinney signed both of Plaintiff's light duty requests, the first one submitted on April 9, 2019 to McKinney directly and the second one submitted on June 10, 2019, on June 23, 2019, attesting that

there was no light duty assignment work available in her unit. Under
information and belief, McKinney signing the original light duty request
submitted on April 9, 2019 on June 23, 2019, shows EMPLOYER'S, and
more specifically management's fraudulent and misleading conduct, as there
was light duty work available in April 2019 because, Plaintiff was, in fact,
working on light duty assignment in April 2019, as authorized by
McKinney. McKinney accepted the light duty document on April 9, 2019;
however, on June 23, 2019, she signed the document (two months after
receiving the document), attesting there was no work, which was a false
misrepresentation made to prevent Plaintiff from working. McKinney's
execution of both of Plaintiff's light duty requests on June 23, 2019
demonstrates management's deceiving conduct, as management infers that
the documents were not submitted until June 2019 which is blatantly false.
Further, attesting that there was no light duty work two months after Plaintiff
submitted his request and worked on a light duty assignment was falsely
documented by management to coverup their scheme to prevent disabled
employees from receiving reasonable accommodations.

44. With each day that Plaintiff was prevented from gainful employment and
prevented from returning to work, he suffered severe financial hardship and
damages, as well as, severe emotional distress.

45. Prior to Plaintiff requesting reasonable accommodations from management,
Plaintiff, and other mail processing clerks were authorized to rotate
throughout the facility where work was available, including in APBS and
manual letters. In response to Plaintiff requesting for reasonable
accommodations, management retaliated against Plaintiff by withdrawing
his accommodations. Plaintiff is informed and believes and thereon alleges
that management's refusal to authorize Plaintiff to work in manual letters, or
rotate as he had previously done in the P&DC facility was in retaliation for

Case No.  5:20-cv-01364
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff filing grievances and to deter other employees from requesting accommodations.

46. Plaintiff obtained a letter dated August 19, 2016 written by the Vice President of Network Operations, Robert Cintron, discussing that "large volumes of mail coupled with employee assignments to the same machine, work area, or for extended periods of time can be physically demanding and may increase the risk of operation fatigue and injury." Mr. Cintron continues to state, "To minimize risk of injury and fatigue on or around equipment in USPS facilities, managers are encouraged to rotate employees between assigned work tasks. Job rotation is an ergonomic concept that limits employees' exposure to physical stressors by alternating the type of work done so that the employees refrain from performing the same movements continuously all day long. Rotating lets employees use a different part of their body so they can rest other parts." The type of ergonomic concept discussed in the letter written by Mr. Cintron is similar to the type of accommodations Plaintiff requested. Plaintiff and his Union representatives requested that Plaintiff be rotated, as an accommodation, to comply with his work restrictions which would allow him to work a normal eight (8) hour shift. McKinney and other employees have denied Plaintiff's requests. Other similarly situated employees are provided with rotation as an ergonomic accommodation, thus treated differently than Plaintiff.

47. Plaintiff is informed and believes and thereon alleges that prior to Plaintiff filing a grievance for failure to accommodate, another employee with a physical disability, working in the same P&DC requested reasonable accommodations for his physical disability, and after management denied the employee's requests, the employee filed a grievance and EEO complaint. In retaliation for employees filing grievances and EEO complaints, management expressed that they would not accommodate any disabled

Case No.  5:20-cv-01364
COMPLAINT FOR DAMAGES

employee in the P&DC. Management made this arbitrary determination without engaging in the interactive process with each individual employee requesting an accommodation. Management made it clear that no employee with a physical disability would be accommodated in the Moreno Valley P&DC. Meanwhile, other employees, not within the protected group of disabled employees were authorized to float in the facility and work in manual letters, as work was available in the unit.

48. Plaintiff had no other recourse, as management refused to accommodate him, or engage him in the interactive process; therefore, Plaintiff engaged in EMPLOYER'S EEO complaint process to disclose the discrimination, retaliation, and harassment in the workplace.

49. Plaintiff contacted the EEO department to file a formal complaint for disability discrimination. Plaintiff was contacted within a couple of weeks via a phone by EEO ADR Specialist, Debbra J. O'Connor. Plaintiff discussed his case with the representative, and she advised Plaintiff that managers and supervisors are not doctors and that doctors are the ones who determine his physical ability to work. Ms. O'Connor asked about Workers' Compensation, and Plaintiff responded that his managers and supervisors refused to provide him with the forms. Plaintiff explained his interaction with Robert Gil, and Gil's refusal to provide him with the appropriate forms. Ms. O'Connor stated that she knows Robert Gil and Gil knows better than that. Ms. O'Connor further stated that not providing the forms was not EMPLOYER'S policy. She advised Plaintiff that she would be mailing documents to Plaintiff, and that Plaintiff should receive the Workers' Compensation document within approximately ten (10) days. Plaintiff did not receive a response from Ms. O'Connor until approximately two (2) months later. Plaintiff felt that he was misled during his conversation, as he felt Ms. O'Connor was going to assist in resolution; however, Plaintiff was

not provided with remedial action, he was not accommodated, and he was abandoned without recourse or guidance.

50. As a result of management's refusal to accommodate Plaintiff and refusal to engage him in dialogue to discuss his medical restrictions, in or about June 2019, Plaintiff, by and through his Union Steward, Mr. Navarro, submitted a Request for Reasonable Accommodations to the Reasonable Accommodations Committee (RAC). On or about July 16, 2019, a meeting was scheduled with the RAC to discuss his request for reasonable accommodations and denial by management. Upon arriving at the facility in San Bernardino, Plaintiff was informed that the meeting was rescheduled. Plaintiff drove to the meeting, and he was never informed of the cancellation. Plaintiff was completely distraught, and he felt that, once again, he was being discriminated against and retaliated against because of his physical disabilities, request for accommodations, and engagement in the EEO complaint process. Plaintiff was suffering from severe emotional distress caused by EMPLOYER'S refusal to allow him to return to work.

51. Finally, on August 6, 2019, RAC scheduled an in-person meeting with Plaintiff, regarding possible workplace accommodations. Attendees at the meeting included, Plaintiff and RAC Committee Chairperson, Sylvia Dominguez ("Dominguez"). On conference call was McKinney, a nurse from San Diego (name unknown), and two other unknown participants. Prior to the meeting, Plaintiff provided Dominguez with his light duty medical documentation to facilitate the discussion. The committee engaged in questioning Plaintiff, regarding his job duties relating to his injuries and medical condition. In response, Plaintiff described his job duties in automation, which resulted in his injuries. Dominguez proceeded to ask what accommodations Plaintiff was requesting. Plaintiff stated that he wanted to be removed from the DBS machine in automation because

Case No.  5:20-cv-01364
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

working on the machine was causing Plaintiff to suffer severe injuries. The committee asked Plaintiff if he had any questions, and he stated that he had one question. Plaintiff stated that he had turned in his medical documentation and light duty request to McKinney and his Supervisor on April 9, 2019, and he asked the committee if it normally takes in excess of two (2) months to determine if the department does not have light duty assignments? An attendee on the phone stated that McKinney can address the question. McKinney was hesitant to respond, and she finally stated that there was a lot going on, and further, McKinney stated that she had been asking Plaintiff for weeks to return to the doctor's office, as the current report states that he can only work for one (1) hour. McKinney's statement was false and misleading, as Plaintiff did return to the doctor, he submitted additional medical documentation in June 2019, and his medical restrictions do not state that he can only work for one (1) hour per day. Plaintiff was disappointed, frustrated, and emotionally distraught, regarding the dishonesty of his manager, McKinney. Plaintiff informed the committee that he had a follow-up appointment with his doctor, and he cannot control the doctor's schedule, and further, that EMPLOYER had his current restrictions. Dominquez interjected by stating to McKinney that she was looking at Plaintiff's report and the medical report does not provide a breakdown of how much time he can spend bending, twisting, reaching, etc. McKinney responded by stating that she reviewed the report with Supervisor, Gilbert, and Gilbert and McKinney agreed that Plaintiff should not return to work until he goes back to the doctor. Plaintiff responded that the medical documentation and work restrictions were good for four (4) to five (5) months, and he could not see a doctor before that time. The nurse mentioned that there was not a report from the disability doctor, and another attendee stated that was because the injury was not originated on the job. All

Case No.  5:20-cv-01364
COMPLAINT FOR DAMAGES

attendees were completely silent. Plaintiff was completely surprised to learn that, again, McKinney was dishonest, as she knew Plaintiff's injuries were a result of Plaintiff working in automation. Dominguez concluded the meeting by instructing Plaintiff to send his doctor's note dated June 10, 2019 to Supervisor, Anna Morales, as she was the new plant Supervisor and experienced with handling these types of matters, and she would get to the bottom of this. Plaintiff left the meeting without resolution and without a determination on his request for reasonable accommodations.

52. On or about August 8, 2019, Dominguez sent Plaintiff a letter, recapping that Plaintiff had engaged in an interactive meeting with RAC on August 6, 2019. Dominguez wrote that after full discussion, Plaintiff agreed the case could be closed at this time. Plaintiff was completely confused, as he did not agree to close the case, but rather, he agreed to provide his medical documents to Supervisor, Morales, as he was advised Morales would get to the bottom of this. Plaintiff was not provided with reasonable accommodations, guidance, or recourse, but rather, his complaint was abandoned without resolution.

53. Plaintiff is informed and believes and thereon alleges that he submitted his medical documentation and light duty request to the Supervisor, Morales, and Manager, McKinney, and as a result, he was denied reasonable accommodations, and informed that he could not return to work until his doctor changed his restrictions. Management did not engage in dialogue with Plaintiff to discuss his medical restrictions, potential alternative accommodations, or consult with Plaintiff regarding his job duties, restrictions, and providing accommodations. Management ignored and dismissed Plaintiff and refused to engage with him in a good faith manner. Since in or about April 2019, Plaintiff has been subjected to adverse employment action, namely he has been prevented from returning to work

LAW OFFICE OF
NANCYROSE
HERNANDEZ

due to management's discrimination against disabled employees and refusal to accommodate disabled employees.

54. Plaintiff contacted his Union Steward, Mr. Navarro, to inquire whether he should call in sick, and asked what options he had at this point, since he was specifically prohibited from returning to work. Plaintiff was advised that he was following management's orders and since he was not sick, he could not call in sick.

55. Plaintiff is informed and believes and thereon alleges that during a discussion with Dominguez after the RAC meeting, he inquired why chairs were removed from the P&DC, only after he requested the use of a chair. Further, he asked for an explanation as to why he could not be provided with the reasonable accommodation of using a chair, as a chair would accommodate his work restrictions, enabling him to perform the essential functions of his job. Dominguez simply responded that the chair was a safety issue; however, under information and belief, the excuse that the chair is a safety issue is baseless and misleading because chairs were found and used in the facility prior to Plaintiff, and another disabled employee requesting the use of a chair. Under information and belief, management removed chairs as a means of intimidation to prevent disabled employees from receiving and requesting accommodations. Plaintiff further contends that the manual letters workstation was designed to be at eye level when seated and there was always a chair in manual letters; however, as soon as Plaintiff requested reasonable accommodations, chairs were removed.

56. On or about August 13, 2019, Plaintiff continued to exhaust his internal remedies by attending a mediation in hopes of receiving reasonable accommodations from EMPLOYER, but to no avail. Management continued to refuse to accommodate Plaintiff.

LAW OFFICE OF
NANCYROSE
HERNANDEZ

57. On September 6, 2019, Plaintiff received a letter from EAS Administrator, Martha Cardenas ("Cardenas"), stating that a review of the Postal Service records indicates Plaintiff has been absent from duty from May 18, 2019 to present. Cardenas further states that Plaintiff failed to provide acceptable documentation to substantiate his continued absence. Plaintiff was informed that in light of the foregoing, he was considered Absent Without Leave (AWOL) since AWOL is always considered a serious offense that cannot and will not be tolerated. Plaintiff was confused, distress, and flabbergasted by the threatening letter, especially considering that his Manager, McKinney, and Cardenas both had knowledge that the only reason Plaintiff was not at work was because management refused to allow Plaintiff to return to work, management refused to accommodate Plaintiff, and management refused to engage Plaintiff in a good faith interactive process to facilitate his return to work. Further, management had Plaintiff's medical documentation substantiating his work restrictions, thus had knowledge of Plaintiff's reason for continued forced absence.

58. Plaintiff has filed his Complaint with EMPLOYER'S Equal Employment Opportunity ("EEOC") and received his right to file a civil action. Plaintiff has complied with all administrative prerequisites to suit.

**FIRST CAUSE OF ACTION**

**(Disability Discrimination in Violation of the**

**Americans with Disabilities Act)**

(As to Defendant, EMPLOYER)

59. Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

60. At all times herein mentioned, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., was in full force and effect and was binding upon EMPLOYER. These sections, and specifically 42 U.S.C. §§ 12112(a) and

Case No.  5:20-cv-01364
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

(b)(1), prohibited EMPLOYER from discriminating against an employee, like Plaintiff, who is a qualified individual as defined in 42 U.S.C. § 12131(2), and who, like Plaintiff, has a physical disability as that term is defined in 42 U.S.C. § 12102(2)(A), (B), and/or (C).

61. Defendant violated 42 U.S.C. § 12101 et seq., and specifically 42 U.S.C. §§ 12112(a) and (b)(1), in numerous respects as alleged herein, including, but not necessarily limited to, discriminating against Plaintiff because of his physical disability; stripping Plaintiff of all his ability to work, including working an eight (8) workday, despite the fact that he had successfully performed his job duties during his employment with EMPLOYER, denying Plaintiff available work beginning from in or about May 2019 to present, withdrawing Plaintiff's reasonable accommodation to work in manual letters, denying Plaintiff of the right to work in other areas of the P&DC when there was available work, denying Plaintiff the use of a chair, denying Plaintiff rest breaks to comply with his medical restrictions, denying Plaintiff the opportunity to rotate with other clerks, restructuring the facility to prevent Plaintiff from receiving his accommodations, and ostracizing Plaintiff to make an example of him to deter other employees from filing disability discrimination complaints. Such conduct has resulted in damage and injury to Plaintiff as alleged herein.

62. Within the time provided by law, Plaintiff filed a complaint with EMPLOYER'S EEO in full compliance with these sections, and he received a final agency decision and right to file a civil action.

63. EMPLOYER incurred a duty to its employees to maintain a work environment that provided reasonable accommodations, was free from wrongful conduct of discrimination against a disabled employee due to a request for accommodation, and to hire and supervise employees in a

manner likely to achieve that end.  These duties were breached by EMPLOYER.

64. As a proximate result of EMPLOYER'S conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

65. Plaintiff has incurred and continues to incur lost wages (back pay and front pay), benefits, legal expenses and attorney's fees. Plaintiff is presently unaware of the precise amount of said damages, expenses and fees and prays leave of court to amend this complaint when said amounts are more fully known.

## SECOND CAUSE OF ACTION

## (Harassment Based on Physical Disability in Violation of the Americans with Disabilities Act)

### (As to Defendant, EMPLOYER)

66. Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

67. At all times herein mentioned, 42 U.S.C. § 12101 et seq. was in full force and effect and was binding upon EMPLOYER. These sections, and specifically 42 U.S.C. § 12112(a), required EMPLOYER to refrain from harassing an employee, such as Plaintiff, who is a qualified individual as defined in 42 U.S.C. § 12131(2), and who, like Plaintiff, has a physical disability as that term is defined in 42 U.S.C. § 12102(2)(A), (B), and/or (C), on the basis of a physical disability.

68. During the course of Plaintiff's employment, EMPLOYER harassed Plaintiff based on his physical disability, in numerous respects as alleged herein, including, but not necessarily limited to, since in or about May 2019 to present, Plaintiff was ostracized, singled out, labelled as the "guy with a limp," prevented from working his contracted eight (8) hour shift, he was

LAW OFFICE OF
NANCYROSE
HERNANDEZ

prevented from using a chair, all chairs were removed from the facility in retaliation against Plaintiff for making a request for reasonable accommodations, management ignored Plaintiff and dismissed him, making him feel isolated in his employment, management was dishonest during the EEO process and misread/misinterpreted Plaintiff's work restrictions, management refused to engage with Plaintiff in a good faith manner because Plaintiff was an employee with a physical disability, and management restructured the facility to prevent Plaintiff from receiving his accommodations.

69. Such harassment was in violation of 42 U.S.C. § 2000e et seq. and has resulted in damage and injury to Plaintiff as alleged herein.

70. Within the time provided by law, Plaintiff filed a complaint with the EEO in full compliance with these sections, and he received a final agency decision and right to file a civil action.

71. As a proximate result of EMPLOYER'S conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

72. Plaintiff has incurred and continues to incur lost wages (back pay and front pay), benefits, legal expenses and attorney's fees. Plaintiff is presently unaware of the precise amount of said damages, expenses and fees and prays leave of court to amend this complaint when said amounts are more fully known.

### THIRD CAUSE OF ACTION

### (Failure to Provide Reasonable Accommodation in Violation of the Americans with Disabilities Act)

(As to Defendant, EMPLOYER)

73. Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

LAW OFFICE OF
NANCYROSE
HERNANDEZ

74. At all times herein mentioned, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., was in full force and effect and was binding upon EMPLOYER. These sections, and specifically 42 U.S.C. §§ 12112(a) and (b)(5)(A) and/or (B), required EMPLOYER to provide reasonable accommodation to an employee, like Plaintiff, who is a qualified individual as defined in 42 U.S.C. § 12131(2), and who, like Plaintiff, has a physical disability as that term is defined in 42 U.S.C. § 12102(2)(A), (B), and/or (C).

75. EMPLOYER violated 42 U.S.C. § 12101 et seq., and specifically 42 U.S.C. § 12112(a) and (b)(5)(A) and/or (B), in numerous respects as alleged herein, including, but not necessarily limited to, failing to provide Plaintiff with reasonable accommodations for his known physical disability, refusing to allow Plaintiff to work his guaranteed contracted eight (8) hour workday, withdrawing Plaintiff's reasonable accommodation of working in manual letters, denying Plaintiff the ability to work in different areas of the P&DC were work was available, denying Plaintiff available work beginning from in or about May 2019 to present, restricting Plaintiff from returning to work until his doctor changed his work restrictions, denying Plaintiff's requests to transfer to different areas in the P&DC where there was available work, denying Plaintiff the use of a chair, denying Plaintiff rest breaks to comply with his work restrictions, denying Plaintiff the opportunity to rotate with other clerks, restructuring the facility to prevent Plaintiff from receiving his accommodations, and ostracizing Plaintiff to make an example of him to deter other employees from filing disability discrimination complaints. Such conduct has resulted in damage and injury to Plaintiff as alleged herein.

76. Management withdrew Plaintiff's reasonable accommodation of working in manual letters. Withdrawing the accommodation previously provided by EMPLOYER violates the ADA. The fact that the accommodation was previously offered to Plaintiff shows that the accommodation was

Case No.  5:20-cv-01364
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

reasonable, and work was available in the unit for Plaintiff to work an eight (8) hour workday. Management withdrew the accommodation without engaging in an interactive meeting.

77. Within the time provided by law, Plaintiff filed a complaint with the EEO in full compliance with these sections, and received a final agency decision and right to file a civil action.

78. As a proximate result of EMPLOYER'S conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

79. Plaintiff has incurred and continues to incur lost wages (back pay and front pay), benefits, legal expenses and attorney's fees. Plaintiff is presently unaware of the precise amount of said damages, expenses, and fees and prays leave of court to amend this complaint when said amounts are more fully known.

## FOURTH CAUSE OF ACTION

### (Failure to Engage in the Interactive Process in Violation of the Americans with Disabilities Act)

(As to Defendant, EMPLOYER)

80. Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

81. At all times herein mentioned, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., was in full force and effect and was binding upon EMPLOYER. These sections, and specifically 42 U.S.C. §§ 12112(a) and (b)(5)(A) and/or (B), and 29 C.F.R. § 1630.2(o)(3), required EMPLOYER to engage in an informal, interactive process with an employee, like Plaintiff, who is a qualified individual as defined in 42 U.S.C. § 12131(2), and who, like Plaintiff, has a physical disability as that term is defined in 42 U.S.C. § 12102(2)(A), (B), and/or (C), in order identify the precise limitations

LAW OFFICE OF
NANCYROSE
HERNANDEZ

resulting from the disability and potential reasonable accommodations that could overcome those limitations.

82. EMPLOYER violated 42 U.S.C. § 12101 et seq., and specifically 42 U.S.C. §§ 12112(a) and (b)(5)(A) and/or (B), and 29 C.F.R. § 1630.2(o)(3), in numerous respects as alleged herein, including, but not necessarily limited to, failing to engage in an informal, interactive process with Plaintiff in order identify the precise limitations resulting from his physical disability and potential reasonable accommodations that could overcome those limitations; failing to engaging in such an interactive process with Plaintiff prior to stripping Plaintiff of all his ability to work, including working an eight (8) workday, withdrawing Plaintiff's reasonable accommodation of working in manual letters without first engaging in an interactive meeting, denying Plaintiff the ability to work in different areas of the P&DC were work was available, denying Plaintiff available work beginning from in or about May 2019 to present, restricting Plaintiff from returning to work until his doctor changed his work restrictions, denying Plaintiff's requests to transfer to different areas in the P&DC where there was available work, denying Plaintiff the use of a chair, denying Plaintiff rest breaks to comply with his work restrictions, denying Plaintiff the opportunity to rotate with other clerks, restructuring the facility to prevent Plaintiff from receiving his accommodations, and ostracizing Plaintiff to make an example of him to deter other employees from filing disability discrimination complaints. Such conduct has resulted in damage and injury to Plaintiff as alleged herein.

83. At no time relevant to this complaint did management engage in dialogue with Plaintiff to analyze the particular job involved and determine its purpose and essential functions, consult with Plaintiff to ascertain the precise job-related limitations imposed by his disability and how those limitations could be overcome with a reasonable accommodation, management failed to

LAW OFFICE OF
NANCYROSE
HERNANDEZ

identify potential accommodations and assess the effectiveness each would have in enabling Plaintiff to perform the essential functions of the position, and management refused to consider Plaintiff's preferred accommodation and select the most appropriate one for all parties.

84. Within the time provided by law, Plaintiff filed a complaint with the EEO in full compliance with these sections, and he received a final agency decision and right to file a civil action.

85. As a proximate result of EMPLOYER'S conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

86. Plaintiff has incurred and continues to incur lost wages (back pay and front pay), benefits, legal expenses and attorney's fees. Plaintiff is presently unaware of the precise amount of said damages, expenses, and fees and prays leave of court to amend this complaint when said amounts are more fully known.

## FIFTH CAUSE OF ACTION
### (Retaliation in Violation of 42 U.S.C. § 12203)
(As to Defendant, EMPLOYER)

87. Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

88. At all times herein mentioned, 42 U.S.C. §§ 12203 and 2000e-3(a) were in full force and effect and were binding upon EMPLOYER. This section prohibited EMPLOYER from retaliating against an employee, such as Plaintiff, on the basis of a complaint of discrimination and/or harassment based on physical disability.

89. During the course of Plaintiff's employment, EMPLOYER retaliated against Plaintiff based on his complaints of discrimination and failure to accommodate based on his physical disability, in numerous respects as

LAW OFFICE OF
NANCYROSE
HERNANDEZ

alleged herein, including, but not necessarily limited to, failing to engage in an interactive process with Plaintiff, stripping Plaintiff of all his ability to work, including working an eight (8) workday, withdrawing Plaintiff's reasonable accommodation of working in manual letters without first engaging in an interactive meeting, denying Plaintiff the ability to work in different areas of the P&DC were work was available, denying Plaintiff available work beginning from in or about May 2019 to present, restricting Plaintiff from returning to work until his doctor changed his work restrictions, denying Plaintiff's requests to transfer to different areas in the P&DC where there was available work, denying Plaintiff the use of a chair, denying Plaintiff rest breaks to comply with his work restrictions, denying Plaintiff the opportunity to rotate with other clerks, restructuring the facility to prevent Plaintiff from receiving his accommodations, and ostracizing Plaintiff to make an example of him to deter other employees from filing disability discrimination complaints. Such conduct has resulted in damage and injury to Plaintiff as alleged herein.

90. Such retaliation was in violation of 42 U.S.C. §§ 12203 and/or 2000e3(a) and has resulted in damage and injury to Plaintiff, as alleged herein.

91. Within the time provided by law, Plaintiff filed a complaint with the EEO in full compliance with these sections, and he received a final agency decision and right to file a civil action.

92. As a proximate result of EMPLOYER'S conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

93. Plaintiff has incurred and continues to incur lost wages (back pay and front pay), benefits, legal expenses and attorney's fees. Plaintiff is presently unaware of the precise amount of said damages, expenses and fees and prays

leave of court to amend this complaint when said amounts are more fully known.

## SIXTH CAUSE OF ACTION
### (Violation of the Rehabilitation Act)
(As to Defendant, EMPLOYER)

94. Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

95. At all times herein mentioned, the Rehabilitation Act, 29 U.S.C. § 701 et seq., was in full force and effect and was binding on EMPLOYER. These sections, and specifically 5 C.F.R. § 353.301(d) and 29 C.F.R. § 1614.203, required a federal government agency, such as EMPLOYER, to make every reasonable effort to allow an injured employee, like Plaintiff, who has partially recovered and who, like Plaintiff, is able to return to limited duty, to return to work and to give full consideration to the placement and advancement of an employee who, like Plaintiff, is a qualified individual with a disability.

96. EMPLOYER violated 29 U.S.C. § 701 et seq., and specifically 5 C.F.R. § 353.301(d) and 29 C.F.R. § 1614.203, in numerous respects as alleged herein, including, but not necessarily limited to, failing to engage in an interactive process with Plaintiff, stripping Plaintiff of all his ability to work, including working an eight (8) workday, withdrawing Plaintiff's reasonable accommodation of working in manual letters without first engaging in an interactive meeting, denying Plaintiff the ability to work in different areas of the P&DC were work was available, denying Plaintiff available work beginning from in or about May 2019 to present, restricting Plaintiff from returning to work until his doctor changed his work restrictions, denying Plaintiff's requests to transfer to different areas in the P&DC where there was available work, denying Plaintiff the use of a chair, denying Plaintiff

Case No.  5:20-cv-01364
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

rest breaks to comply with his work restrictions, denying Plaintiff the opportunity to rotate with other clerks, restructuring the facility to prevent Plaintiff from receiving his accommodations, and ostracizing Plaintiff to make an example of him to deter other employees from filing disability discrimination complaints. Such conduct has resulted in damage and injury to Plaintiff as alleged herein.

97. As a proximate result of EMPLOYER'S conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

98. Plaintiff has incurred and continues to incur lost wages (back pay and front pay), benefits, legal expenses and attorney's fees. Plaintiff is presently unaware of the precise amount of said damages, expenses, and fees and prays leave of court to amend this complaint when said amounts are more fully known.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF Prays for judgment against all Defendants and each of them, according to proof as follows:

1. For compensatory damages in an amount to be proven at trial;

2. For special damages in an amount to be proven at trial;

3. For general damages in an amount to be proven at trial;

4. For compensatory damages for emotional distress, humiliation, and mental anguish on all causes of action;

LAW OFFICE OF
NANCYROSE
HERNANDEZ

5. For interest, including prejudgment interest at the legal rate on all causes of action;

6. For costs of suit, incurred herein on all causes of action;

7. For attorneys' fees on all causes of action pursuant to 29 U.S.C. § 794(b) and/or 42 U.S.C. §§ 2000e-5(k) and/or 12117;

8. For such other and further relief as this Court deems just and proper.


Plaintiff demands a jury trial.


Dated: July 2, 2020                    LAW OFFICE OF NANCYROSE HERNANDEZ


                                       By:  /s/ Nancyrose Hernandez
                                            Nancyrose Hernandez
                                            Attorney for Harold J. Thomas

LAW OFFICE OF
NANCYROSE
HERNANDEZ